UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONALD SPADDY, and | | |
| SHERNETTE MONTGOMERY | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | |
| MASSACHUSETTS APPEALS COURT; | ) | |
| PHILLIP RAPOZA, in his individual and | ) | |
| official capacity as Chief Justice of | ) | |
| Massachusetts Appeals Court; and | ) | |
| PAULA M. CAREY, Chief Justice for | ) | |
| Administration and Management of the Trial | ) | |
| Court, in her official capacity | ) | |
|     Defendants | ) | |
| _____ | ) | |

COMPLAINT AND JURY CLAIM

**NATURE OF CLAIMS**

    This is an action for equitable relief against the Massachusetts Appeals Court,

and Phillip Rapoza , in his official capacity; and  for back pay and compensatory

damages against Phillip Rapoza , in his individual capacity, on behalf of Plaintiffs Ronald

Spaddy and Shernette Montgomery.  Plaintiff's were denied promotion opportunities by

the Defendants, as is hereinafter more specifically asserted, because of their race , Black

and or African American.  The Plaintiffs seeks equitable relief including as follows:  to

order defendants to reopen the position for Chief Court Officer of the Appeals Court, and

to comply with the Supreme Judicial Court ("SJC") Task Force's reported

recommendations,  for merit-based hiring and promotions.  In addition, Plaintiff seeks to

enjoin defendants from retaliating against them.

**JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to the Constitution of the United States, 28 U.S.C. §1343 and 28 U.S.C. §1331.  The rights, privileges, and immunities sought herein to be redressed are those secured by the Fourteenth  and Thirteenth Amendments of the United States Constitution ,including but not limited to the "badges and incidents of slavery", and provisions against racial discrimination pursuant to 42 U.S.C. §1981 as remedied by 42 U.S.C. §1983.

2. On or about March 5, 2013 Plaintiff  Ronald Spaddy filed an Individual Complaint of Employment Discrimination, with the  Massachusetts Commission Against Discrimination ("MCAD") and U. S. Equal Employment Opportunity Commission ("EEOC"), as required to comply with M.G.L.c. 151B, and Title VII, respectively; said complaints charging employment discrimination against him because of his race. Subsequently,  within the statutory time limitations, Plaintiff Spaddy withdrew both his MCAD  and EEOC complaints, to pursue this private cause of action.  Plaintiff Spaddy reserves the right to amend this complaint, to institute a civil action under Title VII, when he receives an EEOC Ninety (90) days right to sue letter.  Plaintiff Spaddy, after having exhausted all administrative remedies, complied therewith, by filing suit with the court within the limitation period.

**PARTIES**

1. Plaintiff Shernette Montgomery (hereinafter "Montgomery") is racially identifiable as a Black and or African  American. Ms. Montgomery is a resident of Massachusetts, and at all relevant times since 1994 to present,  she was employed as a Court Officer for the

Massachusetts Appeals Court, in Boston MA. She had all the experience and qualifications to be hired in the Chief Court Officer position.

2. Plaintiff Ronald Spaddy (hereinafter "Spaddy"), is a Black and or African American, who has been employed as a Court Officer for the Massachusetts Appeals Court, at all relevant times herein since 1999 to the present. Mr. Spaddy, is an employee within the meaning of M. G.L.c. 151B. He had all the experience and qualifications to be hired in the Chief Court Officer position.

3. Defendant Phillip Rapoza (hereinafter "Rapoza") , a Caucasian or white person, is Chief Justice for the Massachusetts Appeals Court, collectively "Defendants".  At all times relevant or material hereto  Defendant Rapoza was an employer , and he acted under color of law. Mr. Rapoza was duly authorized and responsible for the direction management, and administration of the Massachusetts Appeals Court's  personnel policies and procedures, including the employment and promotion of  employees. Defendant Rapoza is being sued in his official capacity for equitable and or injunctive relief; and individually for compensatory and punitive damages.

4. Defendant  Massachusetts Appeals Court (hereinafter "Appeals Court") is an employer, which acted under color of law , at all times relevant or material hereto. The Appeals Court is an entity created under M.G.L.c. 211A to provide the public with an accessible route for appellate review. In addition to judges, the work for the Appeals Court is performed by its legal and administrative staff, including but not limited to law clerks, secretaries and court officers. The Appeals Court is being sued in its official capacity for equitable and or injunctive relief.

5. Defendant Paula M. Carey who is sued solely in her official capacity for equitable relief has served as Chief Justice for Administration and Management of the Trial Court (CJAM) since her appointment in July, 2013.

**FACTS**

6. Plaintiffs were notified  through an Appeals Court  wide email from Mr. Rapoza, on May 10, 2012, that Leo Ajemian, a white male, was selected for the Chief Court Officer (hereinafter "Chief CO") position.

7. There were neither any job posting and recruitment, nor review boards or interviews for the position.  The selecting official, Mr. Rapoza ,who  upon information and belief, did not follow any objective guidelines.

8. Plaintiffs were as qualified or more qualified  than Leo Ajemian, the  white male selected by Mr. Rapoza..  Plaintiffs  Montgomery and Spaddy,  have worked as Appeals Court Officers since 1994 and 1999, respectively. Mr. Ajemian had a little more service, but not any level of college education qualifications. Plaintiffs' superior college education qualifications standing alone are enough to prove pretext.

9. Plaintiffs  allege  that race, was the major factor in their non-selection as Chief CO. The selecting official, Mr. Rapoza, was aware of their race.

10. There was evidence of discriminatory animus in the promotion.  The Defendant has not articulated legitimate, nondiscriminatory reasons for promoting Mr. Ajemian  the white selectee. Plaintiff alleges the ratio of Black managers  to White managers is substantially low. Plaintiffs are not seeking a promotion based solely on their race, but

advancement because of their experience and work ethic. They allege Black Chief Co's and Assistant Chief Co's were not well represented amongst management in defendants office, and it appeared any advancement was impossible. Plaintiffs met all the established requirements for the subject position, including experience and training requirements.

11. To the extent that the Defendant alleges its actions against Plaintiffs were for non-discriminatory reasons, such reasons are a pretext.

12. Plaintiff s' overall performance rating for every year of their employment were excellent.

13. Both Ms. Montgomery and Mr. Spaddy have successfully completed the Massachusetts Trial Court Security Department Promotional Exam for the positions of Assistant Chief CO and Chief CO.

14. To the extent that Defendant alleges Mr. Ajemian the successful white selectee without a college degree , was more qualified then Plaintiffs, it is a pretext.

15. Upon information and belief no Black or African American has been hired as a Chief CO before Plaintiff Spaddy filed his MCAD complaint on March 5, 2013.

16. Plaintiff Spaddy was employed by the Massachusetts Trial Court Department as an Associate Court Officer, from 1994 through 1999. On or about March 24, 1994, Mr. Spaddy was assigned to the Lawrence District Court; and he was appointed as lead Associate Court Officer. In or about June 1994. Mr. Spaddy was reassigned to Lynn District Court. On or about November 1994, Mr. Spaddy was promoted to Security Supervisor, one of three such supervisors in the Trial Court.

17. In or about 1996, Mr. Spaddy, after having been repeatedly denied a promotion to Court Officer, and 12 other minority court employees filed complaints with the MCAD. In or about 1998, the MCAD found probable cause of discrimination against the Massachusetts Trial Court (MCAD Docket Number 96-BEM-3374).

18. In 1999, Mr. Spaddy was hired as a Court Officer for the Appeals Court. In or about January 1999. Mr. Spaddy was repeatedly told by Chief Court Officer Nancy Sinagra, a white person, that he could neither be nor apply for the Assistant Chief Court Officer position. The day of the Assistant Chief CO interview, Mr. Spaddy was told by Chief CO Nancy Sinagra that she would take disciplinary action against Mr. Spaddy if he went to the interview for the Assistant Chief CO position. Mr. Spaddy applied for the position of Assistant Chief CO. Leo Ajemian was promoted to Assistant Chief CO. Mr. Spaddy graduated with a Bachelor of Science degree in criminology in May 1992 from Suffolk University, Boston, MA.

19. In or about 2006, Mr. Rapoza was appointed to the position of Chief CO. In or about 2010 Mr. Rapoza began appointing and hiring court personnel.

20. Upon information and belief, on or about 2004 Mr. Spaddy unsuccessfully applied for Chief Court Officer in the Supreme Judicial Court (SJC) with the knowledge  and recommendations of several  of the sitting Associate Justices of the Appeals Court. Defendants knew or should have known Mr. Spaddy and Ms. Montgomery were interested in applying and receiving a promotion to Chief Court Officer of the Appeals Court.

21. Plaintiff Montgomery received a Bachelor of Science Degree from Northeastern University, in 1992.

22. On March 31, 1994 John Fenton, former CJAM of the Trial court appointed Ms.
    Montgomery as an Appeals Court CO, upon the recommendation of former Appeals
    Court Chief Justice Warner pursuant to M.G.L.c. 221§ 69.

23. Ms. Montgomery was told by former Chief CO Nancy Sinagra, that she (Sinagra) did
    not approve of interracial dating, and Sinagra said she believed that children of
    interracial couples would suffer.

24. Upon information and belief upon her resignation on or about January 2012, Sinagra
    gave a reference to Mr. Rapoza, that Leo Ajemian replace her as Chief CO.

25. On or about December 7, 2010, the SJC established a "Task Force on Hiring and
    Promotion", to review hiring and promotion procedures in the Judicial Branch, after the
    fall-out from the findings of systemic hiring and promotion practices in the Probation
    Department, which were based upon  illegal criteria of political connections and
    elations.

26. The SJC stated that the purpose of the Task force was to "make recommendations
    designed to ensure a fair system with transparent procedures in which qualifications of
    an applicant are the sole criterion in hiring and promotion."

27.  On or about April 25, 2011, the SJC Task Force, chaired by Scott Harshbarger, former
    Attorney General of the Commonwealth, released its "Action Plan for Hiring and
    promotion of Court Officers and Associate Court Officers."

28.  On or about December 16, 2011, the SJC Task Force issued its Final Report…On
    Hiring In The Judicial Branch.

29. Included among the Task Force's seven well-recognized elements of an approach to
    hiring and promotion are the following;

"2)<u>Job Descriptions</u>…"the job description helps keep the appointing authority focused on the qualities of each applicant…

3) <u>Enhancing the Applicant Pool</u>…it is never sufficient to post vacancies…Instead the Court…must engage in vigorous outreach for applicants…

4) <u>Objective Candidate Review</u>…determine that they meet the minimum requirements set forth in the job descriptions…

5 & 6) …behaviorally based interviews and candidate assessments give the hiring authority an opportunity to test an applicant's apparent qualifications and competencies in a realistic fashion making a final…promotion decision."

30. On February 27, 2012, the Hon. Roderick Ireland, former Chief Justice of the SJC informed "All Trial Court Employees" that the Task Force reports "..provide a blueprint for merit-based hiring and promotion throughout the court system." Chief Justice Ireland named an interdepartmental,…Personnel Policy Committee,…to integrate Task Force recommendations into the Trial Court policies.

31. On May 10, 2012, Mr. Rapoza announced via email to the Appeals Court community that he had appointed Leo Ajemian, a White person, to succeed Nancy Sinagra as Chief Court Officer, effective June 1, 2012, when Nancy retired at the end of May.

32. The June 1, 2012 Chief Court Officer position was neither posted nor was there any outreach for applicants. In addition, there were neither review boards nor interviews for the position. Moreover, Leo Ajemian did not meet the "essential requirements" of the existing job description which as of January 2012 require a Chief Court Officer to

possess a Bachelor's Degree in law enforcement, criminal justice, business or public administration. Mr. Rapoza did not follow any objective guidelines. Mr. Rapoza deleted the Bachelor's Degree requirement from the revised Chief CO job description, for the purpose of pre-determining the promotion of Leo Ajemian.

33. Plaintiffs were as qualified or more qualified than Leo Ajemian. Plaintiffs already possessed their Bachelor of Science degrees in criminal justice or criminology. Plaintiffs' superior qualifications show pretext.

34. Plaintiffs  allege that race and color were substantial factors in their non-selection. The selecting official, Mr. Rapoza, knew Plaintiffs were Black and/or African American.

35. Defendants' refusal to post the Chief Court Officer position deprived Plaintiffs  and other Blacks of the opportunity to have their applications fairly considered.

36. Upon information and belief, comparative data from the Trial Court and or Appeals Court will show that since Mr. Rapoza has been Chief Justice very few Blacks or racial minorities have been hired or promoted within the Appeals Court, to any significant managerial positions, other than security officers and unpaid internships.

37. Defendants have demonstrated a pattern of hiring, appointing or promoting Whites, to unposted and otherwise unadvertised vacant positions, which Blacks are denied the opportunity to apply.

38.  In 2010, Mr. Rapoza promoted his former White Law Clerk Tina La Franchie to a newly created management position, that was neither posted nor was anyone else allowed to apply. On or about September 1, 2011, Mr. Rapoza again promoted his former Law Clerk to the unposted position of General Counsel/Director  of Human resources, and no one else was allowed to apply.

39. A White former law clerk of an Associate Justice was appointed without job posting, to work temporarily in the Clerk's office for one (1) year.

40. On September 1, 2011, during a strict hiring freeze  affecting the entire Commonwealth's judiciary, Mr. Rapoza recruited and hired without posting or advertising , a white attorney , Patricia Malone, into an alleged temporary position  in the Clerk's office which subsequently became a permanent position for Patricia Malone.

41. In 2001, the CJAM issued the Personnel Policies and Procedures Manual ("Personnel Manual") pursuant to the CJAM's statutory responsibility under Mass. Gen . laws ch. 211B, § 8.

42. The Personnel Manual's section on hiring policies and procedures explains the considerations that the Trial Court considers relevant in appointment decisions. According to the Manual, "[i]t is the policy of the Trial Court that all appointments be made solely on the basis of merit.  The practice and appearance of nepotism or favoritism in the hiring process are to be avoided." §4.304.  The Manual further elaborates that "the objective of the hiring process is to select the most qualified individuals who can carry out their responsibilities in a competent and professional manner."  Personnel Manual, § 4.000 ("Hiring Policies and Procedures").

43. Other provisions of the Personnel Manual emphasize the necessity of transparency and equal opportunity in the appointment process.  Job openings are to be publicly advertised; interviews must include a standard set of questions objectively tailored to measure the applicant's knowledge, skills and abilities; and all applicants are promised "fair and equitable treatment." Personnel Manual § 4.302(C).

44. Upon information and belief the Massachusetts Trial Court under the authority of CJAM Paula M. Carey, provides administrative services for the Commonwealth's three judicial departments including the Trial Court, Appeals Court, and SJC.

45. The Trial Court administers the union contracts for the Commonwealth's judiciary, including hearing grievances of Appeals Court CO's.

46. To the extent the Defendants allege their actions were for non-discrimination reasons, it is a pretext.

47. Defendants pre-selection of white employees for hire and promotion; their intentional refusal to post available positions, to conduct  outreach  for diverse applicants, to interview candidates, and to require pre-selected employees to meet essential job qualifications, have and continue to have disparate impact upon Black and  African American applicants for hire and promotion.

48. Defendants' discriminating acts toward Plaintiff Spaddy constituted a "pattern, practice, or system (or) a continuous course of conduct" constituting a continuous violation pursuant to 804 C.M.R. sec 110 and G.L.c.151B.

49.  By the foregoing acts, the Defendants  discriminated against the Plaintiffs in the terms and conditions of their employment on the basis of race and or color in violation of G. L.c. 151 B.  The Defendants' desire to discriminate was a determinative factor in their decision to adversely affect Plaintiffs employment, by denying them an opportunity to be promoted.

50. As a result of the foregoing acts, Plaintiffs have been harmed, injured, and damaged, including but not limited to suffering emotional distress.

**<u>FIRST CLAIM FOR RELIEF</u>**

**<u>COUNT I</u>**

**<u>Cause of Action for Equitable and Injunctive Relief under 42 U.S.C. § 1983 for</u>**

**<u>Violation of 42 U.S.C. § 1981 in the Promotion Process;</u>**

**<u>Discriminatory Treatment on the Basis of Race, and Color; Brought by Plaintiffs</u>**

**<u>Montgomery and Spaddy Against Defendant Appeals Court, Trial Court; and</u>**

**<u>Against Rapoza and Carey in their Official Capacities</u>**

51. Plaintiff hereby realleges and incorporates the allegations above in paragraphs 1
through  50.

52. 42 U.S.C. Sec. 1981 as secured by 42 U.S.C. sec. 1983 makes it an unlawful
employment practice to discriminate against any individual with respect to their
compensation, terms, conditions or privileges of employment, because of such
individual's race, and or color.

53. It is an unlawful employment practice to limit, or classify  employees, in any way
which would, adversely affect their status as an employee, because of such individual's
race and or color

54. Defendants have (a) intentionally discriminated against Plaintiffs with respect to their
compensation, terms and conditions, and privileges of employment, because of

Plaintiffs' race and or color, and (b) limited and classified Plaintiffs in ways that adversely affects their status as an employee, because of their race and or color.

55. Defendants have engaged in this continuing practice of discrimination with regard to race and or color, in setting the compensation, terms and conditions of Plaintiffs' employment. Defendant's actions against Plaintiffs have been malicious and oppressive, and conducted in a callous disregard of the rights of the Plaintiffs.

56. Plaintiffs are suffering and will continue to suffer immediate and irreparable harm, leaving them without adequate remedy at law if this court fails to enjoin Defendants from acting in violation of the federal law.

57. Plaintiff seeks an order compelling Defendant Appeals Court and Rapoza to reopen the Chief Court Officer position, because it improperly promoted a less qualified White pre-selected employee, and discriminated against Plaintiff.

**SECOND CLAIM FOR RELIEF**

**COUNT 2**

**Cause of Action For Damages Under 42 U.S.C. § 1983 for Violation of 42 U.S.C. § 1981**

**(Discriminatory Treatment on the Basis of Race, and Color)**

**(Brought by Plaintiffs Montgomery and Spaddy Against Defendant Phillip Rapoza in his Individual Capacity)**

58. Plaintiffs hereby realleges and incorporates the allegations above in Paragraphs 1 through 57.

59. Mr. Rapoza denied Plaintiffs a promotion to Chief CO because of their race and or color.

60. Defendant Rapoza violated 42 U.S.C. § 1981 as secured by 42 U.S.C. § 1983, by intentionally discriminating against Plaintiffs, with respect to their compensation, terms conditions,  or privileges of employment, because of their race and or color.

61. As a direct and proximate result of Defendant Rapoza's intentional, deliberate and willful discriminatory acts and omissions, Plaintiffs have suffered damages in a sum subject to proof.


**THIRD CLAIM FOR RELIEF**

**COUNT 3**

**DISCRIMINATION BASED ON RACE (M.G.L.c. 151B)**

**(Brought by Plaintiff Spaddy Against Appeals Court and Rapoza)**


62. Mr. Spaddy hereby alleges and incorporates the allegations in paragraphs 1 through 61.

63. Defendants Rapoza and the Appeals Court intentionally discriminated against Mr. Spaddy on the basis of his race.

64. Defendant Rapoza's and Appeals Court's employment practices of refusing to post available jobs, not performing any recruitment for applicants, not interviewing more than one white candidate, and not requiring pre-selected white candidates to meet required job requirements, continue to have disparate impact upon Blacks and or African Americans.

65. As a result Spaddy has suffered substantial damages, including lost income, damage to
his reputation and career, and emotional distress.

**PRAYER**

WHEREFORE, Plaintiffs request that this Court:

1. Find that Defendants are in violation of the Plaintiffs' rights pursuant to 42 U.S.C. §1981
as secured by 42 U.S.C. §1983.

2. Find that Defendants are in violation of Plaintiff Spaddy's rights pursuant to  M.G.L.c.
151B.

3. Order the Appeals Court and Defendant Rapoza, in his official capacity, to apply to
Plaintiffs the same opportunities for promotion, and other employment treatment, as
those they apply to other similarly situated white employees.

4. Grant Plaintiff appropriate injunctive relief, including an order that:

    a.  Defendant Appeals Court, and Defendant Rapoza, in his official capacity, reopen
    the position for Chief Court Officer of the Appeals Court, and comply with the
    Supreme Judicial Court ("SJC") Task Force's reported recommendations, for
    merit-based hiring and promotions;

    b. Post all position vacancies available for employment; and

    c. Retain with the Trial Court the official dated copies of all job descriptions.

5. Permanently enjoin Defendant Appeals Court and Defendant Rapoza, in his official
capacity, from discriminating and retaliating against Plaintiffs on the basis of their race,
and or color; and enter an order that the CJAM of the Trial Court collect and maintain
current applicant flow and utilization data to promote diversity.

6.  Pursuant to the Declaratory Relief Act, a declaration stating that the selection of Chief Court Officer on or about June 1, 2012 by Defendants Appeals Court, and  Rapoza, in his official capacity, discriminated against  Plaintiffs Montgomery and Spaddy, on the basis of race and or color, and deprived them of their federal and constitutional rights,  under color of law, within the meaning of 42 U.S.C. §1983.

7.  Pursuant to 42 U.S.C. U.S.C. §1981 as secured by 42 U.S.C. §1983, grant Plaintiffs Montgomery and Spaddy compensatory and punitive damages, including damages for back pay, and emotional distress, together with interest and costs, against Defendant Rapoza, in his individual capacity .

8.  Pursuant to M. G. L.c. 151 B grant Plaintiff Spaddy compensatory and treble  damages, including damages for back pay, and emotional distress, together with interest and costs and attorneys fees, against Defendants Appeals Court and  Rapoza.

9.  Grant Plaintiff reasonable attorneys fees against Defendant Rapoza in his individual capacity for the prosecution of this action pursuant to 42 U.S.C.§1988.

10. Grant Plaintiffs such further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,
Plaintiff  Ronald Spaddy, and
Plaintiff Shernette Montgomery
By their Attorney


/s/ Ozell Hudson, Jr.


_____


Ozell Hudson, Jr.

BBO#556269
Law Offices of Ozell Hudson, Jr.
434 Massachusetts Ave.
Suite 402
Boston MA  02118
(617) 267-0662

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and paper copies will be sent to those indicated as non-registered participants on

May 8, 2015.


/s/ Ozell Hudson, Jr.

_____

Ozell Hudson, Jr.