UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SPADDY, and <br> SHERNETTE MONTGOMERY <br>     Plaintiffs, <br><br> V. <br><br> MASSACHUSETTS APPEALS COURT; <br> PHILLIP RAPOZA, in his individual and <br> official capacity as Chief Justice of <br> Massachusetts Appeals Court; and <br> PAULA M. CAREY, Chief Justice for <br> Administration and Management of the Trial <br> Court, in her official capacity <br>     Defendants | CIVIL ACTION NO. 1:15-cv-11809-IT |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS'(SECOND) PARTIAL MOTION TO DISMISS**

The Plaintiffs, Ronald Spaddy ("Spaddy") and Shernette Montgomery ("Montgomery") submit this Opposition to Defendants' (second) Partial Motion to Dismiss. Plaintiffs' actions are for prospective equitable relief against the Massachusetts Appeals Court ("Appeals Court") in Count I (42 U.S.C. Sec. 1983); and Count III (disparate impact: Title 7 (42 U.S.C. Sec. 2000e et seq.) and G.L.c. 151B); and Count IV (disparate treatment: Title 7 and G.L.c. 151B). Plaintiffs' suit is for back pay and compensatory damages against only Phillip Rapoza ("Rapoza"), in his individual capacity, in Count II (42 U.S.C. Sec. 1983), Count III (disparate impact, G.L.c. 151B), and Count IV (disparate treatment: G.L.c. 151B). Plaintiffs stated, in their first "…Opposition to Defendants' Partial Motion to Dismiss", that unlike M.G.L.c.151B, there is no individual liability under Title 7. However, Plaintiffs Amended Complaint inadvertently included in Count III and IV, individual liability claims pursuant to Title 7, instead of only the M.G.L.c.151B claims. Plaintiffs Spaddy and Montgomery were denied promotion opportunities by the Defendants, as is hereinafter more specifically asserted, because of their race, Black and or

Page | 1

African American. The Plaintiffs seek prospective equitable relief pursuant to federal law, including as follows: order Defendants to reopen the position for Chief Court Officer of the Appeals Court and to utilize merit-based hiring and promotions. In addition, Plaintiffs seek to enjoin Defendants from retaliating against them. Plaintiffs move this Court to deny Defendants' (second) Partial Motion to Dismiss.

**ISSUES**

1 - Whether Plaintiffs' 42 U.S.C. Sec. 1983 (Count I), and Title 7 (Count III, and IV) claims, against the Appeals Court, are actionable for prospective equitable and or injunctive relief, pursuant to the Eleventh Amendment of the U.S. Constitution ("11th Amend.").

2 - Whether Count III and IV alleges sufficient facts to state a plausible pendent state claim, pursuant to G.L.c. 151B, against Defendant Rapoza, in his individual capacity; and does not violate the 11th Amend.

**STATEMENT OF CASE**

This case concerns whether the Defendants, in their individual and or official capacities, are liable for violating Plaintiffs' rights under 42 U.S.C. Sec. 1981 as secured by 42 U.S.C. Sec. 1983, Title 7, and G.L.c. 151B. In their Amended Complaint (hereinafter "Compl."), Plaintiffs alleges claims against the Appeals Court only for injunctive and or prospective relief (Count I, III, and IV). In addition, Plaintiffs allege claims against Defendant Rapoza in his individual capacity for damages (Count II: Sec. 1983; and G.L.c.151B: Counts III, and IV). The 11th Amend. immunity does not bar the claims against individual capacity Defendants. Plaintiffs' claims are for employment discrimination in promotion, based on race and or color, by Defendants in their individual or official capacities, pursuant to 42 U.S.C. Sec. 1981 and secured by 42 U.S.C. Sec. 1983, Title 7, and G.L.c.151B. Plaintiffs' Amended Complaint, inadvertently alleged individual claims pursuant to Title 7, against Defendant Rapoza. Plaintiffs clarify that

there are no Title 7 claims against Defendant Rapoza in his individual capacity. See <u>Powell v. Alexander</u>, 391 F. 3d 1, 22 (1st Cir. 2004) (adopting "course of proceedings' test").

**<u>STATEMENT OF THE FACTS</u>**

Plaintiffs incorporate by reference the facts and allegations in their Complaint (and proposed Amended Complaint), on file with this Court. Plaintiffs Spaddy and Montgomery are "Black African American", who have been employed by the Appeals Court since 1999 and 1994, respectively, as Court Officers. All of Plaintiffs' supervisors are White. (Compl. Para. 1,2, and 35)

Plaintiffs were notified through an Appeals Court wide email from Mr. Rapoza, on May 10, 2012, that Leo Ajemian, a white male, was selected for the Chief Court Officer (hereinafter "Chief CO") position. (Compl. Para. 5,and 30)

There were neither any job posting and recruitment, nor review boards or interviews for the position. The selecting official, Mr. Rapoza, who upon information and belief, did not follow any objective guidelines. (Compl. Para. 6,31)

Plaintiffs were as qualified or more qualified than Leo Ajemian, the white male selected by Mr. Rapoza. Plaintiffs' superior college education qualifications standing alone are enough to prove pretext. (Compl. Para. 7)

Plaintiffs allege that race, was the major factor in their non-selection as Chief CO. The selecting official, Mr. Rapoza, was aware of their race. (Compl. Para. 8)

There was evidence of discriminatory animus in the promotion. The Defendant has not articulated legitimate, nondiscriminatory reasons for promoting Mr. Ajemian the white selectee. Plaintiff alleges the ratio of Black managers to White managers is substantially low. Black Chief CO's and Assistant Chief CO's were not well represented amongst management in Defendants' office, and it appeared any advancement was impossible. Plaintiffs met all the established

requirements for the subject position, including experience and training requirements. (Compl. Para. 9)

To the extent that the Defendant alleges its actions against Plaintiffs were for non-discriminatory reasons, such reasons are a pretext. (Compl. Para. 10)

Plaintiff s' overall performance rating for every year of their employment were excellent. (Compl. Para. 11)

Both Ms. Montgomery and Mr. Spaddy have successfully completed the Massachusetts Trial Court Security Department Promotional Exam for the positions of Assistant Chief CO and Chief CO. (Compl. Para. 12)

To the extent that Defendant alleges Mr. Ajemian the successful white selectee without a college degree, was more qualified then Plaintiffs, it is a pretext. (Compl. Para. 13)

Upon information and belief no Black or African American has been hired as a Chief CO before Plaintiff Spaddy filed his MCAD complaint on March 5, 2013. (Compl. Para. 14)

Plaintiff Spaddy was employed by the Massachusetts Trial Court Department as an Associate Court Officer, from 1994 through 1999. (Compl. Para. 15)

In or about 1996, Mr. Spaddy, after having been repeatedly denied a promotion to Court Officer, and 12 other minority court employees filed complaints with the Massachusetts Commission Against Discrimination (MCAD). In or about 1998, the MCAD found probable cause of discrimination against the Massachusetts Trial Court (MCAD Docket Number 96-BEM-3374). (Compl. Para. 16)

In 1999, Mr. Spaddy was hired as a Court Officer for the Appeals Court. In or about January 1999. Mr. Spaddy was repeatedly told by Chief Court Officer Nancy Sinagra, a white person, that he could neither be nor apply for the Assistant Chief Court Officer position. The day of the Assistant Chief CO interview, Mr. Spaddy was told by Chief CO Nancy Sinagra that she would take disciplinary action against Mr. Spaddy if he went to the interview for the Assistant

Chief CO position. Mr. Spaddy applied for the position of Assistant Chief CO. Leo Ajemian was promoted to Assistant Chief CO. Mr. Spaddy graduated with a Bachelor of Science degree in criminology in May 1992 from Suffolk University, Boston, MA. (Compl. Para. 17)

In or about 2006, Mr. Rapoza was appointed to the position of Chief CO. In or about 2010 Mr. Rapoza began appointing and hiring court personnel. (Compl. Para. 18)

Upon information and belief, on or about 2004 Mr. Spaddy unsuccessfully applied for Chief Court Officer in the Supreme Judicial Court (SJC) with the knowledge and recommendations of several of the sitting Associate Justices of the Appeals Court. Defendants knew or should have known Mr. Spaddy and Ms. Montgomery were interested in applying and receiving a promotion to Chief Court Officer of the Appeals Court. (Compl. Para. 19)

Plaintiff Montgomery received a Bachelor of Science Degree from Northeastern University, in 1992. (Compl. Para. 20)

On March 31, 1994 John Fenton, former CJAM of the Trial court appointed Ms. Montgomery as an Appeals Court CO, upon the recommendation of former Appeals Court Chief Justice Warner pursuant to M.G.L.c. 221§ 69. (Compl. Para. 21)

Ms. Montgomery was told by former Chief CO Nancy Sinagra, that she (Sinagra) did not approve of interracial dating, and Sinagra said she believed that children of interracial couples would suffer. (Compl. Para. 22)

Upon information and belief upon her resignation on or about January 2012, Sinagra gave a reference to Mr. Rapoza, that Leo Ajemian replace her as Chief CO. (Compl. Para. 23)

On or about December 7, 2010, the SJC established a "Task Force on Hiring and Promotion", to review hiring and promotion procedures in the Judicial Branch, after the fall-out from the findings of systemic hiring and promotion practices in the Probation Department, which were based upon illegal criteria of political connections and relations. (Compl. Para. 24)

The SJC stated that the purpose of the Task force was to "make recommendations designed to ensure a fair system with transparent procedures in which qualifications of an applicant are the sole criterion in hiring and promotion." (Compl. Para. 25)

On or about April 25, 2011, the SJC Task Force, chaired by Scott Harshbarger, former Attorney General of the Commonwealth, released its "Action Plan for Hiring and promotion of Court Officers and Associate Court Officers." (Compl. Para. 26)

On or about December 16, 2011, the SJC Task Force issued its Final Report…On Hiring In The Judicial Branch. (Compl. Para. 27)

On February 27, 2012, the Hon. Roderick Ireland, former Chief Justice of the SJC informed "All Trial Court Employees" that the Task Force reports "..provide a blueprint for merit-based hiring and promotion throughout the court system." Chief Justice Ireland named an interdepartmental,…Personnel Policy Committee,…to integrate Task Force recommendations into the Trial Court policies. (Compl. Para. 29)

On May 10, 2012, Mr. Rapoza announced via email to the Appeals Court community that he had appointed Leo Ajemian, a White person, to succeed Nancy Sinagra as Chief Court Officer, effective June 1, 2012, when Nancy retired at the end of May. (Compl. Para. 30)

The June 1, 2012 Chief Court Officer position was neither posted nor was there any outreach for applicants. In addition, there were neither review boards nor interviews for the position. Moreover, Leo Ajemian did not meet the "essential requirements" of the existing job description which as of January 2012 require a Chief Court Officer to possess a Bachelor's Degree in law enforcement, criminal justice, business or public administration. Mr. Rapoza did not follow any objective guidelines. Mr. Rapoza deleted the Bachelor's Degree requirement from the revised Chief CO job description, for the purpose of pre-determining the promotion of Leo Ajemian. (Compl. Para. 31)

Plaintiffs were as qualified or more qualified than Leo Ajemian. Plaintiffs already possessed their Bachelor of Science degrees in criminal justice or criminology. Plaintiffs' superior qualifications show pretext. (Compl. Para. 32)

Defendants' refusal to post the Chief Court Officer position deprived Plaintiffs and other Blacks of the opportunity to have their applications fairly considered. (Compl. Para. 34)

Upon information and belief, comparative data from the Trial Court and or Appeals Court will show that since Mr. Rapoza has been Chief Justice very few Blacks or racial minorities have been hired or promoted within the Appeals Court, to any significant managerial positions, other than security officers and unpaid internships. (Compl. Para. 35)

Defendants have demonstrated a pattern of hiring, appointing or promoting Whites, to unposted and otherwise unadvertised vacant positions, which Blacks are denied the opportunity to apply. (Compl. Para. 31,38, 39)

In 2010, Mr. Rapoza promoted his former White Law Clerk Tina La Franchie to a newly created management position, that was neither posted nor was anyone else allowed to apply. On or about September 1, 2011, Mr. Rapoza again promoted his former Law Clerk to the unposted position of General Counsel/Director of Human resources, and no one else was allowed to apply. (Compl. Para. 37)

A White former law clerk of an Associate Justice was appointed without job posting, to work temporarily in the Clerk's office for one (1) year. (Compl. Para. 38)

On September 1, 2011, during a strict hiring freeze affecting the entire Commonwealth's judiciary, Mr. Rapoza recruited and hired without posting or advertising , a white attorney , Patricia Malone, into an alleged temporary position in the Clerk's office which subsequently became a permanent position for Patricia Malone. (Compl. Para. 39)

Defendants' pre-selection of white employees for hire and promotion; their intentional refusal to post available positions, to conduct outreach for diverse applicants, to interview

candidates, and to require pre-selected employees to meet essential job qualifications, have and continue to have disparate impact upon Black and African American applicants for hire and promotion. (Compl. Para. 41, 64)

Defendants' discriminating acts toward Plaintiff Spaddy constituted a "pattern, practice, or system (or) a continuous course of conduct" constituting a continuous violation pursuant to 804 C.M.R. Sec. 110 and G.L.c.151B. (Compl. Para. 47)

By the foregoing acts, the Defendants discriminated against the Plaintiffs in the terms and conditions of their employment on the basis of race and or color in violation of Sec. 1983, Title 7, and or G. L.c. 151 B. The Defendants' desire to discriminate was a determinative factor in their decision to adversely affect Plaintiffs employment, by denying them an opportunity to be promoted. (Compl. Para. 48)

As a result of the foregoing acts, Plaintiffs have been harmed, injured, and damaged, including but not limited to suffering emotional distress. (Compl. Para. 50)

## STANDARD OF REVIEW

**Plaintiffs' Complaint Adequately State a Plausible Claim**

"In the employment discrimination context, it is not necessary for Plaintiffs to plead facts supporting each element of a claim" (provided the Court can infer Plausibility). Shonnet SISCO v. DLA piper LLP et al., 2011 WL 2413496 (D. Mass), citing Ocasio-Hernandez v. Furtund-Burset, 640 F. 3d 1 18-9 (1st Cir. 2001).

"The well-pleaded allegations of (a Plaintiff's) Complaint will be deemed true for present purposes"…. (in deciding Motion to Dismiss). Daniel F, Cardarelli v. The Massachusetts Bay Transportation Authority 2010WL 1416464 (D. Mass.), herein after "Cardarelli" or "Cardarelli v. MBTA". The pleading must still give fair notice of the claims and grounds for these claims. Plaintiffs met the requirement to do more than just recant labels and conclusions. Plaintiffs have sufficiently alleged facts with enough substance to show they are entitled to relief, and thus

permit litigation to continue. Plaintiffs have raised enough alleged facts to raise their claim beyond mere level of speculation. See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570; 127 S. Ct. 1955, 1965; 167 L.Ed. 2d. 929 (2007). Plaintiff's allegations are factual (not conclusory) and suggestive (not neutral), and are sufficient to place their "claims across the line from conceivable to plausible". See id at 557 N.5, 127 S. Ct. at 1966 N.5. See Joseph Iannacchino, et.al. v. Ford Motor Company, 451 Mass 623, 636 (2008) (quoting Bell Atlantic Corp. v. Twombly, supra). See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

# ARGUMENT

**I. THE APPEALS COURT IS NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY FROM SUIT IN FEDERAL COURT FOR PROSPECTIVE INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. Sec. 1983 IN COUNT I, AND TITLE 7 (COUNTS 3 AND 4).**

Although the 11th Amend. bars causes of actions for monetary damages against states and state officials, it does not prohibit suits for prospective injunctive relief. See Hutto v. Finney, 437 U.S. 678, 690 (1978) (citing Ex Parte Young, 209 U.S. 123 (1908). Plaintiffs Amended Complaint asserts Sec. 1983 claims in Count I only against the Defendant Appeals Court in its official capacity only for prospective injunctive relief.

The 11th Amend. sovereign immunity principle is well established, that "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F. 2d 104, 108 (1st Cir, 1991), citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

The Supreme Court in Will further clarified that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Sec.] 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Id.* at N.10 quoting Kentucky v. Graham, 473 U.S. 159, 167, N.14 (1985).

However, "[i]f a state official is sued in his official capacity, then the Plaintiff's recovery is limited to equitable relief only. O'Malley v. Sherriff of Worcester County, 415 Mass. 132 141 (1993).

Plaintiffs' Amended Complaint (Count I) seek prospective injunctive relief pursuant to federal law (42. U.S.C. Sec. 1983, and Title VII: 42 U.S.C. Sec. 2000e et seq.) Plaintiffs have requested declaratory and injunctive relief; to order the Appeals Court to reopen the position for Chief Court Officer; to implement merit-based hiring and promotion practices (in accordance with federal law); and to enjoin the Appeals Court from retaliating (by denying promotion opportunities). The promotion and hiring practices which Plaintiffs complain of have not ceased; the violation spanned Plaintiffs' earlier and current periods of employment, and continue.

Since Plaintiffs seek "prospective injunctive relief" rather than a retroactive award, the 11th Amend. does not present an obstacle. See Ex Parte Young (supra), and Edelman v. Jordan, 415 U.S. 651, 677 (1974).

## II. SPADDY'S G.L.c. 151B CLAIMS (COUNT III AND IV) ARE ACTIONABLE AGAINST RAPOZA IN HIS INDIVIDUAL CAPACITY

Because Spaddy's Amended Complaint, alleges valid federal claims, Defendants' argument that the Court should not retain pendent jurisdiction over Spaddy's G.L.c. 151B state law claim is unmeritorious. Cf. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Although the 11th Amend. prohibits federal courts from hearing suits brought under state law against states or officials unless a state has waived its immunity. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72 (1996); Spaddy has alleged sufficient facts to state plausible claims against Defendant Rapoza in his individual capacity. Unlike Title 7, M.G.L.c. 151B Sec. (4)(4), 4(4A) or 4(5) authorizes personal liability against supervisors and co-workers, See Martin v. Irwin Industrial Tool Company, et al. (Lawyers Weekly No. 02-203-12 (8 pages)(Neiman,

U.S.M.J.)(Civil Action No. 12-30048-KPN)(May 3, 2012)), citing <u>Beaupre v. Cliff Smith & Associates</u>, 738 NE. 2d 753, 764 (Mass. App. Ct. 2000).

## DISPARATE TREATMENT

Plaintiffs have alleged specific facts that they were treated differently than similarly situated Court Officers of a different race, color, or ethnicity. (Compl. Para. 7, 9). It is not necessary for Plaintiffs to plead facts supporting each element of a claim provided the facts pleaded allow the court to infer plausibility. <u>Shonnet SISCO v. DLA Piper LLP</u>, et al. (supra). Plaintiffs have stated a plausible claim for race discrimination. Pursuant to <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), Plaintiffs have alleged a prima facie case. They are members of a protected class (Black African-American); they performed up to Appeals Court's reasonable expectations; they were treated differently than similar Court Officers; and they suffered several adverse job actions. "When Plaintiff makes a prima facie case, an inference arises that the protected class characteristics was a determining factor." <u>Kale v. Combined Insurance Co. of America</u>, 861 F. 2d 746, 760. (1st Cir. 1988).

## CONCLUSION

A state official sued in their individual capacity for damages is a "person" under Sec. 1983. <u>Hafer v. Melo.</u>, 502 U.S. 21, 24 (1991). Defendant Rapoza's Sec. 1983, and G.L.c. 151B individual liability (Counts II, III, and IV) is based on his own acts or omissions, amounting at least to the reckless or callous indifference to the constitutional rights of others, and is not based on acts or omissions of others under the doctrine of Respondent Superior. <u>Gaudreault v. Salem</u>, 923 F. 2d 203 (1st Cir. 1990). Plaintiffs have alleged plausible claims against all Defendants

For the foregoing reasons this court should deny Defendants' Partial Motion To Dismiss.. Plaintiffs respectfully request a hearing.

Date: December 28, 2015

RESPECTFULLY SUBMITTED,
Plaintiff Ronald Spaddy, and
Plaintiff Shernette Montgomery
By their Attorney

/s/ Ozell Hudson Jr.
Ozell Hudson, Jr.
BBO#556269
434 Massachusetts Ave.
Suite 402
Boston MA 02118
Tel. (617) 267-0662
OHudsonLaw@aol.com

## CERTIFICATE OF SERVICE

I, Ozell Hudson, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 28, 2015.

/s/ Ozell Hudson, Jr.
Ozell Hudson, Jr. (BBO#556269)