UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SPADDY and<br>SHERNETTE MONTGOMERY,<br><br>    Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS APPEALS COURT,<br>et al.,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 15-cv-11809-IT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM AND ORDER

November 22, 2017

TALWANI, D.J.

    Plaintiffs Ronald Spaddy and Shernette Montgomery, Court Officers employed by Defendant Massachusetts Appeals Court ("Appeals Court"), allege unlawful discrimination in hiring practices for the Chief Court Officer position at the Appeals Court. Second Am. Compl. 1 [#39]. Defendant Chief Justice of the Massachusetts Trial Court ("Trial Court") Paula M. Carey ("Chief Justice Carey") has filed a Motion for Judgment on the Pleadings [#64]. For the reasons that follow, that motion is ALLOWED.

I.    Facts Alleged in the Complaint

    Since 1994 and 1999 respectively, Montgomery and Spaddy have been Court Officers employed by the Appeals Court. Second Am. Compl. ¶ 9 [#39]. Spaddy is "a Black and or African American," and Montgomery is "racially identifiable as a Black or African American." Id. ¶¶ 1-2. Prior to working at the Appeals Court, both Plaintiffs earned bachelor's degrees, id. ¶¶ 19, 22, and since their employment began, their overall performance has been rated "excellent," id. ¶ 13.

Plaintiffs have completed the Trial Court's Security Department Promotional Exam for the positions of Assistant Chief Court Officer and Chief Court Officer. Id. ¶ 14. In 2004, Plaintiff Spaddy unsuccessfully applied for the Chief Court Officer position at the Supreme Judicial Court. Id. ¶ 21.

In May 2012, Plaintiffs learned via a court-wide email from then-Chief Justice of the Appeals Court Phillip Rapoza that Leo Ajemian, an Assistant Chief Court Officer, would replace Nancy Sinagra as Chief Court Officer of the Appeals Court when she retired at the end of the month. Id. ¶ 32. The job opening for Chief Court Officer was never posted publicly and no one other than Ajemian was considered for the position. Id. ¶ 33. Although Ajemian, who is white, had worked for the Appeals Court longer than either Plaintiff, he did not have a bachelor's degree. Id. ¶ 9. At the time, holding a bachelor's degree was one of the "essential" requirements for the position of Chief Court Officer, but that prerequisite was stricken in June 2012. Id. ¶ 33. Neither Plaintiff was allowed to apply for, or was considered for, the position of Chief Court Officer. Id.

The Trial Court provides administrative services to the three Massachusetts judicial departments, including the Appeals Court. Id. ¶ 45. Further, the Trial Court is "required to maintain applicant flow data to review hiring decisions in order to verify compliance with diversity initiatives before an applicant is hired into a position." Id. In 2001, the Chief Justice for Administration and Management of the Trial Court ("CJAM") issued a Personnel Policies and Procedures Manual ("Personnel Manual"), setting forth the Trial Court's policies regarding merit-based hiring. Id. ¶¶ 42-44. Additionally, as a result of the December 16, 2011, report authored by the Supreme Judicial Court's Task Force on Hiring and Promotion, an interdepartmental Personnel Policy Committee was established to integrate the recommendations from that report into Trial Court policies. Id. ¶¶ 26-31.

Plaintiffs, as Court Officers of the Appeals Court, are required to obey the directions of the Director of Security for the Trial Court. Id. ¶¶ 46, 49. Court Officers of the Appeals Court are in a single bargaining unit, together with Trial Court employees, for collective bargaining purposes, and their terms and conditions of employment are controlled by the same collective bargaining agreements. Id. ¶ 47. The Trial Court negotiates these collective bargaining agreements on behalf of both itself and the Appeals Court. Id. The Trial Court also administers these union contracts, including hearing grievances of Court Officers of the Appeals Court. Id. ¶ 49.

Chief Justice Carey is the "policy and judicial head of the Trial Court." Id. ¶ 6. She "shares responsibility for establishing uniform guidelines and policies to further minority employment within the judicial system." Id. Plaintiffs allege that they desire to include Chief Justice Carey in this action so that the court will be able to grant complete prospective relief. Id.

II.     Legal Standard

A Rule 12(c) motion for judgment on the pleadings "implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). Such motions are "ordinarily accorded much the same treatment" as motions to dismiss under Rule 12(b)(6). Id. at 54. To prevail on a motion for judgment on the pleadings, the moving party must show that the "uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Id. Facts contained in the pleadings are considered in the light most favorable to the non-moving party, and all reasonable inferences are drawn in its favor. Id.

III.    Analysis

Chief Justice Carey is named only in Count 1 of the Second Amended Complaint [#39], which seeks prospective injunctive relief under 42 U.S.C. § 1983 for violations of Plaintiffs'

3

rights protected under 42 U.S.C. § 1981.[1] "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To prevail under Section 1983, a plaintiff must show that (1) the challenged conduct was carried out under color of state law, and (2) the challenged conduct deprived plaintiff of rights secured by the Constitution or by federal law. Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001). The dispute here centers on whether the Second Amended Complaint alleges any actionable conduct by Chief Justice Carey.

To prevail on a Section 1981 claim, a plaintiff must demonstrate that "(1) she is a member of a racial minority; (2) the defendant discriminated against her on the basis of her race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts." Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013). Discriminatory conduct post-dating the formation of Plaintiffs' employment relationship, which impedes the enforcement of the contractual rights of that relationship, can constitute a violation of the rights protected by Section 1981. See id. at 363.

Chief Justice Carey does not dispute that Plaintiffs have adequately alleged their status as members of a racial minority. At issue is whether the Second Amended Complaint alleges facts to support a claim that Chief Justice Carey discriminated against Plaintiffs on the basis of their race. To support the claim that a defendant discriminated against a plaintiff "on the basis of race," a plaintiff must show that there was intentional discrimination because of their race. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583 n.16 (1984); General Bldg.

---

[1] Count 1 is also brought against former Chief Justice of the Appeals Court Scott Kafker, who has not sought judgment on the pleadings.

Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) (holding that Section 1981 "can be violated only by purposeful discrimination").

Here, Plaintiffs allege that Chief Justice Carey heads the Trial Court, which provides administrative services to the Appeals Court, including services relating to employment of Court Officers. Plaintiffs allege no facts supporting a claim that Chief Justice Carey was involved in any way in the hiring decisions for the Chief Court Officer position at the Appeals Court. While Plaintiffs allege that "Defendants knew or should have known Mr. Spaddy and Ms. Montgomery were interested in applying and receiving a promotion to Chief C[ourt] O[fficer] of the [Appeals Court]," Second Am. Compl. ¶ 21 [#39], neither this nor any other allegation ties Chief Justice Carey to the decision not to post the position or the decision to promote Ajemian to Chief Court Officer of the Appeals Court. Neither alleging that Chief Justice Carey oversaw administrative services nor including her for the purpose of securing effective relief satisfies Plaintiffs' burden of stating facts to support their claim of intentionally discrimination against Plaintiffs on the basis of their race.

Thus, Plaintiffs' Section 1983 claim against Chief Justice Carey, pursuant to Section 1981, must fail.

IV.     Conclusion

For the foregoing reasons, Defendant Chief Justice Carey's Motion for Judgment on the Pleadings [#64] is ALLOWED.

IT IS SO ORDERED.

Date: November 22, 2017                    /s/ Indira Talwani
                                           United States District Judge