UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD SPADDY and SHERNETTE MONTGOMERY,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS APPEALS COURT; PHILLIP RAPOZA, in his individual capacity; MARK GREEN, CHIEF JUSTICE of the MASSACHUSETTS APPEALS COURT, in his official capacity, and PAULA M. CAREY, CHIEF JUSTICE of the TRIAL COURT, in her official capacity,<br><br>Defendants. | Civil Action No. 15-cv-11809-IT |

MEMORANDUM & ORDER

September 30, 2019

TALWANI, D.J.

I.  Introduction

Plaintiffs Ronald Spaddy and Shernette Montgomery, court officers at the Massachusetts Appeals Court ("MAC"), allege that Defendant former Chief Justice Phillip Rapoza denied them promotions in violation of 42 U.S.C. § 1981 because of their race and/or color, and discriminated against Spaddy in violation of Mass. Gen. Laws c. 151B on account of his race. Second Am. Compl., Counts 2, 6 [#39]. Pending before the court is Defendant Rapoza's Motion for Summary Judgment [#103]. For the reasons discussed below, Defendant's motion is ALLOWED.

II.  Standard of Review

On a motion for summary judgment, the court must construe "the record in the light most favorable to the non-movant and resolv[e] all reasonable inferences in that party's favor."

Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 7–8 (1st Cir. 1990) (internal quotation marks and citation omitted). "To defeat a motion for summary judgment, the evidence offered by the adverse party cannot be merely colorable or speculative . . . [it] must be significantly probative of specific facts." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (internal quotation omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Rossy v. Roche Prods., Inc., 880 F.2d 621, 623–24 (1st Cir. 1989).

While courts should apply these standards carefully, "especially in cases that present difficult issues of proof," summary judgment may be appropriate "even where elusive concepts such as motive or intent are involved." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Summary judgment is proper when "[s]ubmitting the issue of discriminatory intent to a jury [] would amount to nothing more than an invitation to speculate . . . . [T]he question is not whether there is literally no evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 9 (1st Cir. 2000).

III. Facts

   A. *Background*

      1. *Court Officers and the Chief Justice at the MAC*

In 1984, the MAC created a Personnel Committee to review applications for court officers and other staff positions and to recommend candidates for hiring and promotions. Pls.' Opp'n ¶¶ 17, 19, 21 [#107]. By statute, final appointment of court officers is left to the Chief Justice. Mass. Gen. Laws c. 221, § 69A(b) (the Chief Justice of the MAC appoints the chief court officer, assistant chief court officer, and the court officers of the MAC); Pls.' Opp'n ¶¶ 19, 337 [#107]; id. at Ex. 5 ("Brown Dep.") at 43:22-23, 45:14 [#107-5].

Nancy Sinagra began working as a court officer at the MAC in 1985, and was promoted to Chief Court Officer in 1994. Pls.' Opp'n ¶¶ 161, 163 [#107]. Sinagra supervised Leo Ajemian, Plaintiffs Spaddy and Montgomery, and other court officers.

Ajemian became an MAC court officer in 1986 and was promoted to Assistant Chief Court Officer in 2002. Pls. Opp'n ¶¶ 211-12 [#107]. Plaintiff Montgomery was appointed as a court officer at the MAC in 1994. Plaintiff Spaddy was hired as a court officer at the MAC in 1999. Id. at ¶¶ 62, 115-116 [#107]; Pls.' Opp'n, Ex. 7 (Deposition of Shernette Montgomery ("Montgomery Dep.")) at 14:14-15:4 [#107-7].

Defendant Rapoza, a Justice on the MAC since 1998, was sworn in as Chief Justice in October of 2006. Def.'s Facts ¶ 7 [#105]; Pls.' Opp'n ¶ 307 [#107]; Pls.' Opp'n, Ex. 11 (Deposition of Phillip Rapoza ("Rapoza Dep.")) at 14:1-3, 16:14-17 [#107-11].

      2. *Court Officers in the Trial Court and the Task Force Report*

In 2010, the Massachusetts Supreme Judicial Court ("SJC") appointed The Task Force on Hiring in the Judicial Branch "with a mandate to 'make recommendations designed to ensure a fair system with transparent procedures in which the qualifications of an applicant are the sole

criterion in hiring and promotion' in the Probation Department and throughout the Trial Court."
Rapoza Reply Ex. D [#108-4] at 1. In 2011, the Task Force released an "Action Plan for Hiring
and Promotion of Court Officers and Associate Court Officers." Id. The Task Force found that
the process "would benefit from a more rigorous and precisely drawn set of minimal
qualifications" and other changes that "would also facilitate a more transparent and, in all
likelihood, a more routinely effective hiring process." Id. at 8. The Task Force offered
recommendations that would "increase the transparency with which the hiring process is
conducted, thereby inevitably reducing the opportunity for speculation and rumor about why
particular individuals were hired." Id. The Task Force recommended establishing a mission
statement, a job description with minimum competencies, multi-channel sourcing of candidates,
including posting the job, objective review of candidates' qualifications, behaviorally based
interviews, candidate assessments, and an applicant tracking system. Id. at 9-11.

  B. *Ajemian's Promotion*

  In March 2012, Sinagra announced her retirement and recommended to Chief Justice
Rapoza that Ajemian be promoted to Chief Court Officer. Pls.' Opp'n ¶ 172 [#107]; Sinagra
Dep. at 23:3-24:5 [#107-8]. Chief Justice Rapoza did not post the job, interview candidates, or
ask the Personnel Committee to review candidates for the position. Pl.'s Opp'n ¶¶ 221, 233-36
[#107]; Ajemian Dep. at 34:16-35:6 [#107-9]. None of the other court officers, including Spaddy
and Montgomery, were given the opportunity to apply to be Chief Court Officer. Plaintiffs
Opp'n ¶¶ 86, 120, 263 [#107]; Pls.' Opp'n, Ex. 6 ("Spaddy Dep.") at 63:7-10 [#107-6];
Montgomery Dep. at 20:1-12 [#107-7].

  On May 9, 2012, Chief Justice Rapoza offered the position of Chief Court Officer to
Ajemian and informed Sinagra of his decision. Pls.' Opp'n ¶ 255 [#107]; Rapoza Dep. at 171:2-

4

18 [#107-11]. Chief Justice Rapoza announced Ajemian's promotion to the rest of the court officers, including Plaintiffs, via a meeting in his office and then sent a court-wide congratulatory email on May 10, 2012. Plaintiffs Opp'n ¶ 79 [#107]; Spaddy Dep. at 55: 8-18 [#107-6]; Rapoza Facts, Email with Subject: Congratulations to Leo Ajemian! ("Rapoza Email") [#105-7]. In his email, Chief Justice Rapoza wrote:

> By way of background, Leo has worked in courthouse security since 1976 [ . . . ] [i]n 1986, he began service as a court officer at the Appeals Court and in 2002 he was appointed Assistant Chief Court Officer. As our most senior court officer after Nancy [Sinagra], he has participated in – and helped develop – every aspect of our court's security program. He is someone on whom I already rely and he will bring a significant amount of institutional memory to his new position.
>
> Leo is well respected and is liked by justices and staff alike. Moreover, having already met with the court officers, I know that Leo has the respect of his peers and that his appointment is very well-received by his fellow officers."

Rapoza Email [#105-7].

When Sinagra retired on May 31, 2012, Chief Justice Rapoza promoted Ajemian from Assistant Chief Court Officer to Chief Court Officer. Pl.'s Opp'n ¶¶ 215, 222-23 [#107]. Ajemian remained Chief Court Officer at the MAC until his retirement at the end of 2014. Pls.' Opp'n ¶ 250 [#107]; Ajemian Dep. at 27:10-22 [#107-9].

### C. *Ajemian, Montgomery and Spaddy's Race and Qualifications*

In 2012, Ajemian, who is white, had worked for the MAC for 26 years, ten of which he served as the Assistant Chief Court Officer. Pls.' Opp'n ¶¶ 225, 246, 255 [#107]. Prior to joining the MAC, Ajemian worked in security for the Suffolk County Courthouse Commission from 1977 to 1986. Pls.' Opp'n ¶ 1 [#107]; Ajemian Dep. At 11:7-12:1 [#107-9]. He completed a fifteen-week training course at the Criminal Justice Training Council with the Belmont Police Department in 1986, was a part-time campus police officer at Boston College, and trained with

5

the Boston Police bomb squad in the 1970s. Ajemian Dep. At 43:11-24. He has a high school diploma, but no bachelor or associates degree. Pls.' Opp'n ¶ 194 [#107].

In 2012, Montgomery, who is black, had worked for the MAC as a court officer for 18 years. Id. at ¶ 164. She had no formal supervisory experience. From 1992 to 1994, Montgomery was a special police officer at Massachusetts General Hospital and attended the Northeast Police Regional Institute. Id. at ¶ 114; Montgomery Dep. at 13:7-20 [#107-7]. Montgomery has a Bachelor of Science degree in Criminal Justice from Northeastern University. Pls.' Opp'n ¶ 112 [#107].

In 2012, Spaddy, who is black, had worked for the MAC as a court officer 13 years. From 1994 to 1999, Spaddy worked as a security supervisor at the Trial Court. Pls.' Opp'n ¶¶ 60-62 [#107]; Spaddy Dep. at 11:3-12:7 [#107-6]. In his first year at the Trial Court, Spaddy attended the one-week "Mass[achusetts] Criminal Justice Training Council," where he participated in "crash courses on what to do," and studied "defensive tactics procedures" and "civil rights violations." Pls.' Opp'n ¶ 64 [#107]; Spaddy Dep. at 16:8-17:1 [#107-6]. Spaddy has a Bachelor of Science degree in Criminology in Law from Suffolk University. Pls.' Opp'n ¶ 58 [#107].

D. *Job Descriptions*

The record includes a 2004 "Chief Court Officer" job description from the "Court Officer Manual" for the trial courts. Def.'s Rep., Ex. A ("2004 Job Description") [#108-1]. This job description included as an "essential requirement[]" an Associate's Degree in law enforcement or a similar program and ten years' experience as a Massachusetts trial court officer, or "an equivalent combination of education and security-related experience." Id. The job description also listed "supervisory experience" as a "preferred requirement." Id. Although this job

6

description states that it is for the trial courts, the record contains evidence that the Court Officer Manual applied to the Appeals Court. See Sinagra Dep. at 70:16-18 [#107-8].

The SJC Task Force reported in 2011 that "[t]he qualifications for chief court officer [for the trial courts] are divided into 'essential requirements' and 'preferred requirements.'" The essential requirements include "a Bachelor's Degree in law enforcement or similar program and ten years as experience as a court officer in the Massachusetts Trial Court, or an equivalent combination of education and security related experience, and the preferred requirements include supervisory experience. Rapoza Reply Ex. D [#108-4] at 5-6, n.6. The record does not contain any evidence that these requirements were applied to the Appeals Court.

In response to Spaddy's complaint to the Massachusetts Commission Against Discrimination ("MCAD"), Defendants submitted two versions of a job description for the MAC Chief Court Officer job. Rapoza Reply Ex. B (Letter to MCAD ("First Job Description")) at 2-4 [#108-2]; Rapoza Reply Ex. C (Second Letter to MCAD ("Second Job Description")) at 4 [#108-3]. Sinagra testified that she drafted the first document in 2004, during her tenure as Chief Court Officer, using the Trial Court job description as a model. Sinagra Dep. at 81:2-22 [#107-8]. Counsel's cover letter to the MCAD states that the first version was an "incorrect" version, and asked that the second version be used in its place. See First Job Description [#108-2]. There is no evidence in the record as to the origin of the second version. Nothing in the record indicates that either of these descriptions was ever adopted or promulgated as the operative job description of the Chief Court Officer for the MAC.[1]

---

[1] The two versions differ from the version published in the 2004 Court Officer Manual and the description set forth in the SJC Task Force report in elevating a "[d]emonstrated ability to supervise others," from a preferred qualification to a required qualification, and by explicitly introducing a High School diploma and experience as a means of satisfying the experience and education requirement. The versions differ from each other in requiring along with the High

7

There is no evidence in the record as to whether Rapoza considered any of these four versions of a chief court officer job description in connection with the selection process.

IV.     Analysis

Where, as here, Plaintiffs proffer no direct evidence of discrimination, the court utilizes the familiar McDonnell Douglas framework to determine if Plaintiffs can prove their case through indirect evidence. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). At the prima facie stage, each Plaintiff needs to demonstrate that he or she was a member of a protected class, was qualified for the open position, was rejected for that position, and someone holding similar or inferior qualifications received that position instead. Goncalves v. Plymouth Cty. Sheriff's Dep't, 659 F.3d 101, 105 (1st Cir. 2011); McKenzie v. Brigham & Women's Hosp., 541 N.E.2d 325, 327 (Mass. 1989). A successful prima facie case "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If Plaintiffs satisfy that showing, the burden shifts to the Defendant to offer a legitimate, nondiscriminatory reason for his actions. McDonnell Douglas Corp., 411 U.S. at 802. If Defendant meets this burden, Plaintiff must provide evidence that Defendant's proffered reason is pretextual. Id. at 804. Such a showing is sufficient for a claim to succeed under Massachusetts law. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016). In the First Circuit, a "pretext-plus" jurisdiction, Plaintiffs' federal claim succeeds by further demonstrating that the true reason for the adverse action is discriminatory. Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999).

---

School diploma "more than ten years of security-related experience" in the version Sinagra drafted in 2004, see First Job Description at 4 [#108-2]; Pls.' Opp'n ¶¶ 204-05 [#107], and requiring a "more than fifteen years of security-related experience," in the "corrected" version.

A. *Plaintiffs' Prima Facie Case*

Defendant does not dispute on summary judgment that Plaintiffs are members of a protected class and that they were qualified for the Chief Court Officer positions. Rather, Defendant argues that Plaintiffs failed to establish a prima facie case of discriminatory treatment under either 42 U.S.C. § 1981 or Mass. Gen. Laws c. 151B because Plaintiffs cannot show that a person with similar or inferior qualifications was promoted in their stead. Id. at 7-8; Rapoza Reply at 2 [#108].

"Similarly situated candidates must share 'roughly equivalent qualifications to perform substantially the same work.'" Goncalves, 659 F.3d at 106 (quoting Feliciano de la Cruz, 218 F.3d. at 5). "They must be similar in 'material respects.'" Id. (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)). In determining what qualifications are material for purposes of the prima facie case, the court considers the Chief Court Officer job descriptions from the Court Officer Manual and the 2011 SJC Task Force Report, and disregards the two additional job descriptions as there is no evidence in the record that these job descriptions were ever adopted.

While the job descriptions included an educational requirement that Ajemian did not meet (an associate's degree in the 2004 version and a bachelor's degree in the 2011), the descriptions also allowed for "an equivalent combination of education and security-related experience." Here, Ajemian had served as a court officer at the MAC for 26 years, versus their 18 and 13 years, but Plaintiffs each had a bachelor's degree and he did not. And although Ajemian had served as Deputy Chief Court Officer for the last ten years, supervisory experience is only listed as a "preferred qualification" and not a "required qualification" in these two job descriptions.

9

In sum, the court finds that Plaintiffs and Ajemian had "roughly equivalent qualifications" for purposes of a prima facie case.

B. *Defendant's Legitimate Non-discriminatory Reason*

Plaintiffs have established their prima facie case and the burden shifts to Chief Justice Rapoza to offer a legitimate non-discriminatory reason for hiring Ajemian rather than Spaddy or Montgomery. While evaluating Defendant's reason, it is not the role of the court to "second-guess the business decisions of an employer, imposing [its] subjective judgments of which person would best fulfill the responsibilities of a certain job." Rossy, 880 F.2d at 625. Chief Justice Rapoza explained that he hired Ajemian because his performance was "exemplary," he was the "senior-most member of the department," and "he was the only member of the department who for ten years had held a position of [Deputy Chief Court Officer]." Rapoza Dep. [#105-5] 99:12-22. Defendant also explained that during Ajemian's time as assistant chief court officer, Sinagra had delegated "a number of her responsibilities" to Ajemian. Id. at 99:23-100:3. Based on Ajemian's performance as Deputy Chief Court Officer, Chief Justice Rapoza viewed him as "very capable" of being the Chief Court Officer. The contemporary email from Defendant lauding Ajemian's qualifications supports Defendant's contention that the hiring decision was based on Ajemian's qualifications. See Rapoza Facts, Email with Subject: Congratulations to Leo Ajemian! ("Rapoza Email") [#105-7]. Chief Justice Rapoza's analysis of Ajemian's qualifications and his work as Deputy Chief Court Officer provides a legitimate non-discriminatory reason for promoting Ajemian.

C. *Pretext*

The burden then shifts back to Plaintiffs to show the reason is pretextual. Plaintiffs offer no evidence that Chief Justice Rapoza's explanation is factually untrue, as it is undisputed that

10

Ajemian was the Deputy Chief for ten years. Nor have Plaintiffs offered evidence to show that this reason was not the actual reasoning behind the choice.

Plaintiffs try to show pretext through circumstantial evidence. They have presented evidence of informal hiring practices at the MAC, despite the Supreme Judicial Court Task Force on Hiring in the Judicial Branch's "Action Plan for Hiring and Promotion of Court Officers and Associate Court Officers." Rapoza Reply Ex. D [#108-4]. In that plan, the Task Force recommended best practices for transparency in hiring, including posting job openings, sourcing candidates from many channels and objective screening of qualified candidates. Id. at 10-11 [#108-4]. A jury could well find that the hiring practice here was not exemplary, and that a more open and transparent process as recommended by the SJC Task Force may well have resulted in a different candidate being selected, or if Ajemian had remained the top candidate, the avoidance of the appearance of discrimination. But such findings fall short of Plaintiffs' burden here, under McDonnell Douglas, of offering evidence from which a jury could find Defendant's stated reasons are pretextual. 411 U.S. at 802.

Plaintiffs further point to Chief Justice Rapoza's hiring white employees for other positions as evidence of discriminatory intent, but the evidence in the record is insufficient to draw any such conclusions. Plaintiffs discuss only a small number of hirings, but offer no additional details, including any evidence about whether any black candidates applied for those jobs. Plaintiffs also suggest that Chief Justice Rapoza mischaracterized giving a salary increase and title change to a black woman, Monique Duarte, as a promotion when characterized the action as being compensated for managerial work she was already doing. Rapoza and Duarte's different terms to describe the salary and title increase is not evidence of pretext. If anything, the correction of Duarte's salary and title demonstrates the extent to which Defendant's practice was

to reward the experienced person already performing the same or similar work. Finally, Plaintiffs contend that Chief Justice Rapoza's hiring upon Ajemian's retirement of a black Chief Court Officer without experience at the MAC undermines the stated rationale for choosing Ajemian two years earlier. Plaintiffs have not challenged that subsequent hiring, however, and the court cannot make the inferential leap Plaintiffs seek.

In sum, Plaintiffs have failed to come forward with sufficient evidence from which a jury could find that Defendant's reason for the hiring was pretextual. Accordingly, Rapoza's Motion for Summary Judgment [#103] is ALLOWED as to Counts 2 and 6.

V. Conclusion

For the forgoing reasons, Rapoza's Motion for Summary Judgment [#103] is ALLOWED as to Counts 2 and 6. At oral argument on September 25, 2019, the parties agreed that if summary judgment is entered as to Counts 2 and 6, then judgment should also enter as to the remaining counts, Counts 1 and 4. Accordingly, judgment is entered on all counts in favor of Defendants.

IT IS SO ORDERED.

September 30, 2019 /s/ Indira Talwani
United States District Judge